Mokphy, J.
delivered the opinion of the court.
The petition charges, that plaintiff being the lawful proprietor of two lots of ground in the city of New Orleans sold one of them to Nathaniel Dick for $30,000, and the other to John Parker for $16,300; that without any just ground whatever, defendant pretends to have some claim on the said lots, to the great injury of the petitioner, who is thereby prevented from receiving a balance of the price yet due to her, because the purchasers hy reason of this pretended claim of defendant refuse to pay the same; that defendant has been amicably requested to desist from thus settingup any claim to these lots, but that he persists in so doing. Tho petition concludes with a prayer for damages, and for a decree enjoining defendant to desist from Ms pretended claim and not to slander any more the title of the plaintiff to this property.
The defendant avers that he is the only legitimate son of the lato Win. A. Depeyster, that as such he is the true and lawful owner of one undivided fourth part of the lots described in the petition, and that he has never been legally divested of his title to the same. There was a judgment below in favor of the plaintiff, declaring her title to the property to be good anil valid.
The defendant appealed.
The record shows that B. P. Porter and 'Wm. A. Depeyster, formerly practising attorneys and partners in this city, became joint proprietors, by purchase, of sundry pieces of real estate. Depeyster died in 1818, leaving a widow and a son, the defendant, then a minor under the age of puberty. By Ms last will he appointed for his executors, his wife, his partner, Porter, and Dennis Prieur, who all three accepted the trust and qualified. [354] Shortly after, Porter instituted in the district court an action in partition, in which a judgment was rendered decreeing the sale at auction of all the property held in common between him and the deceased, for the purpose of effecting a partition. At this sale the lots in dispute were adjudicated to Porter, but he and his children having since all died intestate, the property came into the possession of the plaintiff as their sole heir. In 1822 Porter, as acting executor of Depeyster, rendered his account in the court of probates, and one half of the price of these lots was carried to the credit of the succession. Upon examination of this account it was found correct, and a judgment was rendered approving the same, and discharging Porter from his trust.
The case has been submitted to us on the single question whether Por *582 ter, being one of the executors of Depeyster, could lawfully become the purchaser of the property in dispute at the sale made to effect a partition of it.
The counsel for the defendant relies on the Spanish law then in force and to be found in the Novissima Recopilación, lib. 10, tit 12, 1. 1; he has referred us also to 11 Martin, 297; 5 La. Rep. 20, and to divers articles of the Old Oivil Oode. These laws and authorities establish beyond any doubt that it was unlawful for an executor to purchase the property of a succession coniidod to his administration. The rule is not peculiar to the Spanish law ; it obtains, it is believed,- in almost every system of jurisprudence, but does it apply to a case like the present? ”We think not.
The adjudication by which Porter became the sole owner of the property in question was not, 'in contemplation of law, a purchase from the estate of Depeyster. When property was acquired jointly by several persons by inheritance, purchase or otherwise, and it could not be partaken in kind, our late Oivil Oode pointed out. as a means of partition the cant or licitation of it among them. It consisted in adjudging the common property to the highest [355] bidder for it among the co-proprietors. When they were all of full age, the licitation could take place amicably and in such manner as they agreed upon; but if any one of them disagreed, was under age, interdicted or absent, the property could be put up for licitation only at a public sale, and after the usual advertisements. Oivil Oode of 1808, p. 188, arts. 172, 175. The adjudication of the common property, if made to a stranger, operated as a sale to all intents and purposes; but when made to one of the co-heirs or co-proprietors it was not in law a sale, although it bore all the appearances of a sale. It was considered a mode of partition, one of the effects of the action convmuni di/oidendo ; in the words of the Oode, it was the complement of the partition. Id. 188, art. 174. The adjudication to one co-heir or co-proprietor had only the effect of putting an end to the indivisión and of determining the rights of the joint owners in the common property; before licitation, the right of each co-proprietor extended to the whole and to every part of the undivided thing; there was no portion of it to which'each co-proprietor could be said to be without any right; it was totm/rn in toto, et totmi in qualibet parte. By the effect of the licitation, the right of the co-proprietor who gave the highest bid became absolute to the whole property, while that of each of the other owners of the property resolved itself into a claim for their respective shares of the money for which it was adjudged. Mo new title passed by the licitation, and the co-proprietor who kept the property at the highest bid was considered in law as having been the sole owner of it from the beginning, under the obligation of paying to his co-proprietors their proportions of the price to which it might subsequently be carried by licitation between them.
In describing the effects of licitation, Pothier says, “ Lorsque plusieurs légataires ou plusieurs acquéreurs licitent entr’eux un hóritago qui leur a été legué en commun, ou qu’ils ont acquis en commun, celui d’entr’oux qui s’en rend adjudicataire, est censó avoir été directement lógatairo ou acquóreur du total de l’héritage, a la charge seulement de faire raison a ses co-légataires ou *583 co-acquéreurs, ele leurpart dans le prix auquel l’héritage serait porté par [356] la licitation qui en serait faite entr’eux.”
“ H suit de ces principes que la licitation entre co-liéritiers ou co-propriétaires n’est pas dans notre droit un contrat de vente que les parties licitantes fassent do leur part dans l’héritage licité á celui d’entr’eux qui s’en rend adjudieataire, puisqne suivant les susdits principes, l’adjudicataire n’acquiert proprement tiers de ses co-héritiers ou co-propriétaires.” Traitó de la Vente, Nos. 638, 639. This doctrine is held by all the writers on the Napoleon Code from which have been borrowed the provisions of our Civil Code on the subject. 2 Troplong, Vente, No. 859, and fol. and No. 876; 12 Toullier, No. 155; Merlin, verbo Licitation; Civil Code of 1808, p. 366, art. 118, p. 206, art. 249, p. 188, art. 174. If then the adjudication to Porter was only one of the effects of the action eommm/ni dividendo, we cannot think that the circumstance of his being the executor of Depeyster had deprived him of the right which he had, in common with his co-proprietors, of keeping these lots at the highest bid they might reach at public sale. If instead of a partition effected by licitation, a partition in kind had taken place, it would surely not be contended that Porter could acquire no portion of the property partaken because the estate of which he was executor had in it an undivided interest; in either mode of partition his title to the property would have been the same. The rule that an executor cannot purchase property of the estate he administers, does not therefore in our opinion apply to a ease like the present. This was intimated in Scott’s Executrix v. Gordon’s Executor, 14 La. Reports, 122. The very object of the partition was to determine what property belonging to Depeyster’s estate, was to be administered upon. Until this was done, it could not be known whether the right of the estate was to the property itself or to a sum of money. According to the principles above' laid down, the very momentJthe adjudication was made to Porter, his former co-proprietor was considered in law as having never had any title to the lots themselves, but only a right to receive a proportion of tho money they [357] might bring by licitation. The share of the deceased in the common property which by the partition was determined to consist of a sum of money, has been admininistered upon by the curator and his account has been duly homologated.
The judgment of the district court is therefore affirmed, with costs.